JULIUS C. DRUCKLIEB, Respondent, *v.* SAM H. HARRIS, INCORPORATED, et al., Appellants.

Corporation — stockholder's contract that in case of disagreement the stocks owned by one of such stockholders should be purchased at the book value thereof — unauthorized reduction of such book value — court of equity cannot compel restoration of book value or enjoin changes in plan of bookkeeping.

1. Where one stockholder contracts with another stockholder of a corporation for the purchase and sale of shares of stock at the book value as shown on the accounts of the corporation, such a contract does not require or justify the intervention of a court of equity in the management and control of the books of account of the corporation.

2. On the organization of a corporation to which plaintiff paid in a sum in cash and one of the defendants assigned certain assets, it was agreed that in case of any breach of the agreement by the directors of the company, such defendant would purchase from the plaintiff at the latter's election the shares of stock held by him at the existing book value of the same as shown at the time of such election. The relief demanded in this action is that the individual defendants and the defendant corporation be compelled to restore the books of account to their original condition, that the reduction of the value of the good will be canceled, and that the defendants and the corporation be enjoined from making or changing the accounts of the corporation or the books of account whereby the book value of the capital stock of the corporation be reduced contrary to the fact. *Held*, that the action cannot be maintained.

*Drucklieb* v. *Harris*, 155 App. Div. 83, reversed.

(Argued June 5, 1913; decided June 20, 1913.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 7, 1913, which reversed an order of Special Term granting a motion for judgment in favor of defendants on the pleadings.

The following question was certified: "Does the complaint state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendants Sam H. Harris, Incorporated, Sam H. Harris and Cleveland A. Harris, or any one of them."

The nature of the action and the facts, so far as material, are stated in the opinion.

*Jacob Ansbacher* for appellants. There is absolutely no authority or precedent for the maintenance of this suit. The plaintiff cannot ask this court to invent a new remedy, because he has a complete remedy not only in law, but also in equity. (*Gamble* v. *Q. C. Co.*, 123 N. Y. 91; *Robinson* v. *R. F. B. Co.*, 171 N. Y. 538.) The plaintiff has absolutely no standing in court, because the contract upon which he bases his suit is void as being contrary to public policy. (*Bliss* v. *Matteson,* 45 N. Y. 22; *S. R. C. M. Co.* v. *Moneuse,* 132 N. Y. 570; *Landes* v. *Hart,* 131 App. Div. 6; *Kountze* v. *Flanagan,* 46 N. Y. S. R. 471; *West* v. *Camden,* 135 U. S. 507; *Wilbur* v. *Stoepel,* 46 N. W. Rep. 724; *Gilchrist* v. *Hatch,* 100 N. E. Rep. 473.)

*Louis O. Van Doren* and *Franklin G. Manley* for respondent. The facts pleaded constitute a complete cause of action. (*Brady* v. *Waldron,* 2 Johns. Ch. 148; *Ensign* v. *Colburn,* 11 Paige Ch. 503; *Vandemark* v. *Schoonmaker,* 9 Hun, 16; *Jones* v. *Balles,* 9 Wall. 364.) The plaintiff's individual and property rights have been injured by the fraudulent acts of those in control of a corporation. Therefore, equity enables him to sue to obtain redress. It makes no difference who are the

defendants so long as all of the wrongdoers are brought before the court. (*Watkins* v. *Watkins & Turner Lumber Co.*, 11 App. Div. 517; *Jacobs* v. *Mexican Sugar Refining Co., Ltd.*, 104 App. Div. 242; *Weber* v. *Wallerstein*, 111 App. Div. 693; *Miller* v. *Crown Perfumery Co.*, 125 App. Div. 881; *Sage* v. *Culver*, 147 N. Y. 241; *Jacobson* v. *Brooklyn Lumber Co.*, 184 N. Y. 152; *Lillienthal* v. *Betz*, 185 N. Y. 153; *Witherbee* v. *Bowles*, 201 N. Y. 427; *Hiscock* v. *Lacy*, 9 Misc. Rep. 578.) The fact that the corporation is not a party to the agreement ought not to enable Harris, who controls the corporation, to use the corporation and its books as an instrument for the successful accomplishment of fraud, or as a shield against attack when once fraud has been committed. (*Carr* v. *Kimball*, 153 App. Div. 825; *Godley* v. *Crandall & Godley Co.*, 153 App. Div. 697.)

CULLEN, Ch. J. The defendant Sam H. Harris and the plaintiff entered into an agreement by which, after reciting that Harris had requested the plaintiff to invest the sum of $20,000 in the business then carried on by Harris, it was agreed that Harris should assign all the assets, property, trade marks and good will of his business to a corporation to be formed at the estimated value of $55,000, for which he was to receive 550 shares of the capital stock of the corporation, and the plaintiff was to pay to the corporation in cash the sum of $20,000, for which he was to receive 200 of said shares and the further number of 73 shares to be transferred to him by Harris. In the transfer from said Harris to the corporation, "Sam H. Harris, Incorporated," the good will of the business of Harris was estimated at $20,000, and on the organization of the corporation so entered on the books. By the contract Harris further agreed that in the event of a failure on the part of the board of directors to employ the plaintiff at a salary of not less than $2,400 a year for a specified time, or, in case of any other breach of the agreement by the said

directors, he would purchase from the plaintiff at the latter's election the shares of stock held by him at the existing book value of the same as shown at the time of such election. The other details of the agreement are immaterial.

The complaint further alleges the organization of the corporation and the performance of the contract by the plaintiff and the defendant Sam H. Harris; that the three directors are the said Harris, his son, and the plaintiff; that since the organization of the corporation the defendant Sam H. Harris has importuned the plaintiff to sell his holdings at less than the par value thereof, and at much less than the sum paid therefor by the plaintiff, and that in the course of such negotiations has threatened that unless the plaintiff agreed to sell his stock, the plaintiff would lose the entire amount of his investment; that in pursuance of such threats and to induce the plaintiff to sell his stock, the directors of the corporation, controlled by said Sam H. Harris, have on the books reduced the value of the good will from $20,000 to the nominal value of $1,000; and made other reductions in the accounts of the corporation by transferring assets to the loss side of the profit and loss account so as to greatly decrease the book value of the shares of stock. No breach of the agreement by Harris or the corporation is alleged. The relief demanded is that the individual defendants and the defendant corporation be compelled to restore the books of account to their original condition, that the reduction of the value of the good will be canceled, and that the defendants and the corporation be enjoined from making or changing the accounts of the corporation or the books of account whereby the book value of the capital stock of the corporation be reduced contrary to the fact. To this complaint the defendants demurred, which demurrer has been overruled in the courts below — in the Appellate Division by a divided court.

The first point made by the appellants is that the con-

tract on which plaintiff bases his cause of action is void as contrary to public policy, because by it the said defendant Harris is subjected to liability in case the corporation does not continue the plaintiff as a director and officer, while his fiduciary relation to the corporation obligates him to act for the best interests of the corporation, which may require a termination of or a failure to continue the plaintiff's employment. As has been said, "An agreement which is designed, or which in its nature and effect tends to lead persons who are charged with the performance of trusts or duties for the benefit of others to violate or betray them, is contrary to public policy and void and cannot be enforced." Doubtless such a general rule is correct, but it is not applicable to the case before us. The only stockholders of the corporation were the plaintiff and the defendant Sam H. Harris. An agreement quite similar to the one before us was held valid in the case of *Lorillard* v. *Clyde* (86 N. Y. 384, 389). In that case Judge ANDREWS said: " I can see no objection on the score of public policy, to an agreement between the parties about to form a corporation, agreeing upon the general plan, upon which it is to be organized and conducted, so long as nothing is provided for inconsistent with the provisions of the statute, or immoral in itself. An agreement providing for the details of management made in advance, might not be binding upon the trustees of the corporation when organized, but such an agreement is not illegal."

Though the agreement made between Harris and the plaintiff was valid and binding, we think that for two reasons the action ought not now to be maintained. *First.* As intimated in *Lorillard* v. *Clyde* (*supra*), while the contract is binding on the defendant Harris, so far as it makes him liable for the failure of the corporation to conduct its business as agreed, we do not think it was binding on the corporation. (Cook on Corporations, sec. 707; *Munson* v. *Syracuse, G. & C. R. R. Co.*, 103 N. Y. 58.)

But in reality that question is not presented by the case. The contract between Harris and the plaintiff makes no provision as to the method in which the books shall be kept. Therefore, if this action be maintained, it must rest on the proposition that when one stockholder contracts with another stockholder of a corporation for the purchase and sale of shares of stock at the book value as shown on the accounts of the corporation, such a contract requires or justifies the intervention of a court of equity in the management and control of the books of account of the corporation. We think the dissenting justice below was right in the view that it does not, there being no diversion or waste of assets.

It is said in the prevailing opinion of the Appellate Division that the corporation here is in effect nothing more than an incorporated partnership. This is true to a limited extent, but I do not assent to that doctrine in its full scope and entirety. Persons forming a corporation thereby gain many immunities and privileges of which they are not possessed as members of a partnership. Their liability for the debts and obligations of the business is limited and the death of one of the members does not work a dissolution of the corporation, as it does in the case of a partnership. For these privileges the parties have to pay a price. They have not the same unrestricted control and management of their enterprise as they would have as partners, nor is the right of a single party to the joint enterprise safeguarded either as against the state or against the other parties in the case of a corporation as in the case of a partnership. The constitutionality of the "guarantee of bank deposits" law was ultimately upheld on the ground that its requirement was a condition within the power of the state to exact from corporations created by it. (*Noble State Bank* v. *Haskell*, 219 U. S. 575.) As to the power of the state over corporations, see, also, *Schenectady & Sar. R. R. Co.* v. *Thatcher* (11 N. Y. 102); *Bailee* v. *Hollister* (26 id. 112); *Union*

*Hotel Co.* v. *Hersey* (79 id. 454). For this reason the doctrine that is current in some other jurisdictions has never been accepted here, that the legislature can compel persons engaged in ordinary business vocations to incorporate against their will.

*Second.* It is by no means certain that the plaintiff's rights will ever be impaired or affected by the action of which he complains. There may never be a breach of the terms of his employment, and if there should be, whether the plaintiff sell his stock to the defendant Sam H. Harris is a matter solely of his own volition. He may never choose to sell it, in which case the book value of the stock will be of no importance. It is true that under the contract he is bound to give the defendant Harris the privilege for 90 days of purchasing his stock before he sells to any other party, but under this provision he is not required to sell it at the book value, but may exact any price he sees fit. Finally, if the contingency should arise in the future by which the plaintiff would be entitled to have Harris purchase his stock at the book value and the plaintiff should desire to avail himself of that right, there would seem to be no reason why an action in equity against Sam H. Harris to ascertain the true book value of the stock instituted at that time would not be as efficacious to protect the rights of the plaintiff as if brought now. I do not believe that even in the case of an agreement between partners similar to the one before us a court should intervene until a contingency happens which requires a determination of the value of the interest of a partner.

The order of the Appellate Division should be reversed, the interlocutory judgment of Special Term modified and the complaint dismissed, without costs in any court. Question certified answered in the negative.

GRAY, WILLARD BARTLETT, HISCOCK, CHASE, HOGAN and MILLER, JJ., concur.

Order reversed, etc.