## SLOAN LUMBER CO. v. SOUTHERN ORNAMENTAL IRON WORKS.

### No. 12887.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 14, 1933.

Rehearing Denied Dec. 16, 1933.

Samuels, Foster, Brown & McGee, and A. M. Herman, all of Fort Worth, for appellant.

Richard Owens, of Fort Worth, for appellee.

LATTIMORE, Justice.

Appellee brought suit against appellant alleging assumption by the latter of the payment of an account due by Johnson, a contractor, to the former.

Johnson contracted to erect a building for Dugger, who executed before the building was started a demand mechanic's lien note to the order of Johnson for $15,000. This was admitted to be more than the contract price of $12,500 and was pursuant to the understanding that on completion of the building this would be merged into a loan to be obtained on the security of said building. Johnson transferred the same forthwith to appellant, who furnished the lumber and various other materials for the building, the money to pay the workmen, including an equal amount per day to Johnson, and the money to pay some of the subcontractors and materialmen. Johnson bought the iron material for the building from appellee and same has not been paid for. After the building was completed, two loans were obtained by Dugger, totaling $11,300, into which the said mechanic's lien was extended and the balance of the $15,000 note was released and extinguished. An additional mechanic's lien for $350 was executed in like manner for a garage on same premises and was handled in the same way and included in the lien transferred for the $11,300 extension loans.

The case was submitted to a jury, who answered special issues that appellant assumed the payment of Johnson's debt to appellee and that appellant had been paid $467.50 for the use and benefit of appellee. Judgment thereon was for said sum.

Appellee understood that a loan was to be obtained on the building when completed and was expecting "their money" out of the proceeds of that loan. The negotiation of that loan was handled by appellant and the proceeds delivered to appellant. Appellant moved for a peremptory instruction, was refused, and asserted thereunder that (1) no promise to assume was shown, nor (2) any consideration for a promise.

■■ As to the latter, the certain facts are that appellant obtained a sale by this transaction of a large amount of its merchandise in the erection of the buildings, which is sufficient consideration. Johnson testified that his dealings were with Sammons, manager of appellant, and that he had an understanding with Sammons before he (Johnson) took the Dugger contract that appellant would finance the job. This can be sufficient consideration. Southern Surety Co. v. Texas Pipe Co. (Tex. Civ. App.) 62 S.W.(2d) 534.

As to the former, aside from such inferences as may arise from the transfer of the note to appellant and the conduct of the appellant in assuming the superintendence of the disbursing of the fund represented by the note, the entire evidence in favor of such assumption is the testimony of Johnson, testifying at the instance of appellee:

"Q. Will you state whether or not the Sloan Lumber Company agreed to pay the subcontractors for furnishing material and labor on the job? A. They did." "I transferred the mechanic's lien to them so that they would furnish material and the payroll and take care of the carpenters and painters and electricians and so forth." "The Sloan Lumber Company took over the Dugger job whenever I signed the mechanic's lien to them." "After the Dugger job was completed Mr. Sammons agreed that the Sloan Lumber Company was to pay these subcontractors out of this contract price, yes sir." "I had bought other materials for other jobs from the Southern Ornamental Iron Works (appellee). The Sloan Lumber Company always paid them because I transferred the mechanic's lien to them. They wouldn't finance me the payrolls and material unless they had some kind of security. I transferred the note for that security." Appellee had submitted prices to Johnson before he took the contract and all he "had to do was to notify them to send it over."

■ It is a difficult question in cases of this kind to determine where testimony fails and conclusions and opinions begin. For example, take the first answer above quoted. The witness may mean to say that Sammons said, "I assume the payment of the subcontractors," or he may mean, "I took what Sammons said to have the effect that Sloan Lumber Company assumed the debts due to the subcontractors." We have, after some debate among us, concluded that the above was the substantial restatement by Johnson of the language of Sammons rather than the legal conclusion of Johnson. Sherman Oil Co. v. Dallas Oil Co. (Tex. Civ. App.) 77 S. W. 961.

■■ Aside from that, we observe that no objection thereto was made by appellant and no error is assigned to its admission, the contention of appellant being that the whole being "incompetent," no judgment can be founded on it. This contention, often discussed in Texas judicial opinions, founds itself principally on the much-quoted excerpt from Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, 537: "While the admission of this testimony was not objected to by counsel for defendants, that fact would be important only in the event its admission was afterwards complained of as violative of a right reserved to defendants. Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case."

We have examined thirty-six subsequent opinions citing the above. Most of them we believe correct and most of those we do not discuss.

However, some of them apparently make no distinction between evidence which is legally relevant but objectionable for want of proper presentation, and evidence which is not competent in any form—a distinction we believe should prevail. As to the latter, its admission into the record can give it no respectability; it is an alien enemy to justice and, like the leper of old, itself cries out "unclean, unclean," without awaiting banishment.

Not so the former. The subject of the inquiry is proper, but the guaranties of experience, the necessity of expedition, the casualties of carelessness, loose talking, and similar human frailties have led the wisdom of our predecessors to furnish rules which will produce in court the most accurate reproduction of the facts in the most direct and speedy manner. Reverting to the analogy above; the uniform of the occasion may have been neglected, but the body is healthy.

If the opposition is satisfied that the garb is not a disguise, why should not the testimony have value? A copy of a letter is offered. The opposition knows the original is in existence and that an objection will not change the evidence for the original can be produced, and therefore sits silent. The copy should have the same evidentiary value as the original. A witness says, "Smith told me he saw the defendant on last Saturday." Hearsay! But the defendant knows Smith did see him. To object would not subserve justice and would only add to the cost and delay of subpœnaing Smith. He therefore is silent. The testimony should be entitled to a place in the ranks of competent evidence. A witness says, "He agreed to assume my debt." The defendant knows that if he objects and the court sustains him the witness can and will detail a lengthy conversation consuming valuable time of the court and increasing the expenses of government and that the result will be that the true details of the transactions will show such agreement. He therefore makes no protest against the form of the answer. We believe the answer becomes, thereby, probative. It is a practical rule preventing unjust results. Often the question as in this case of whether the answer conforms to correct form or best evidence, or is a conclusion or a violation of some other rule of form, is a close one. If objection had been made the formal error could have been easily and readily cured. To allow the opposition to sit silent and lead his adversary to believe the manner of presentation satisfactory, and then when the doors to correction are closed attempt to push him out of the temple of justice, does violence to our conception of right. Daniel v. Harvin, 10 Tex. Civ. App.

439, 31 S. W. 421. Henry v. Phillips, supra, is manifestly correct. In that case the testimony which came in without objection was that the grantor of a deed after delivery had declared orally that he did not intend the deed to have the effect it did have. No claim of fraud, accident, or mistake was involved. That evidence was not admissible in any form. The grantor himself on the witness stand could not vary the deed he had parted with by such evidence. It was a case clearly within the class of evidence inherently evil.

Likewise, in Moody v. Rowland, 100 Tex. 369, 99 S. W. 1112, where there was no pleading to justify evidence which was admitted without objection. That evidence was denied probative force.

The Commission of Appeals, Section B, quoted the above in Austin Bros. v. Patton, 294 S. W. 537, 538. Evidence came in without objection, offering to show the intention of parties to a contract; "such contract not being attacked as not speaking the truth." Manifestly, Henry v. Phillips, supra, sustains that decision, as it does also Southern Surety Co. v. Nalle (Tex. Com. App.) 242 S. W. 197, in which testimony was made without objection of declarations by an agent concerning his agency made at a time not in connection with or explanatory of any transaction being performed in his line of duty to his principal, but made while out on a hunting trip. This was not a want of form, but that the very declaration itself was not relevant.

In Webb v. Reynolds (Tex. Com. App.) 207 S. W. 914, it is held that where the plaintiff's pleadings show that proof of orders by a probate court are vital to show plaintiff's ownership of the note sued on, such burden was not met by the testimony of the plaintiff that he was then the owner of the note. The suit was to collect a note. Judgment was against the defendant who filed an answer and on trial refused to appear and defend and an uncontested trial was had. The answer denied under oath that plaintiff was the owner of the note and alleged that the transfer of the note to plaintiff was a fraud to prevent a set-off against the same in the hands of the payee and that the transfer was without consideration. Webb v. Reynolds (Tex. Civ. App.) 160 S. W. 152, 156. It is difficult to reconcile this holding with the Supreme Court opinions below cited. These cases are cited in United States Fidelity & Guaranty Co. v. Henderson (Tex. Civ. App.) 53 S.W.(2d) 811, 813, to justify a general statement that evidence not recited in the latter opinion but summed up as responsive to leading questions and assumptive of unestablished facts had no probative effect. Also Johnson v. Gattegno (Tex. Civ. App.) 267 S. W. 740, where the evidence was hearsay but the inquiry a proper subject.

Kempner v. Huntsville State Bank (Tex. Civ. App.) 282 S. W. 325, held the unobjected

to testimony of a cotton factor, Jordon, that he bought the cotton for Kempner's account, a conclusion which could not be a basis for judgment. However, in that case the facts upon which Jordon based his statement were fully developed and did not justify such statement, hence the decision is not necessarily in point. Dallas Ry. Co. v. Bankston (Tex. Com. App.) 51 S.W.(2d) 304, 305, speaks of the evidence there as insufficient under Henry v. Phillips, but an examination of the record shows there was not any evidence, under any view of that authority, to support the verdict.

Our holding should not be confused with those cases in which objection was made, as in Pickering v. Harris (Tex. Com. App.) 23 S.W.(2d) 316.

█ We have examined a large number of opinions handed down in Texas since Henry v. Phillips. To analyze each would lengthen our writing unduly. Most of them on the facts are justifiable, though the language of the opinion in some might at first reading be misunderstood. Our discussion of those above has been in an effort to show that our Supreme Court has not denied the distinction between the effect to be given to unobjected to testimony defective as to substance, or defective as to form, and also to show that some of the Civil Appeals opinions have not recognized that distinction. As said by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 290: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Often a salutary rule is one of convenience and must be given a practical application. To press either view of this matter to a syllogistic extreme is to make it ridiculous. We allow a witness to testify, "He said 'I will pay you.'" Of course, in a sense that is a conclusion formed from the belief of the witness on the fact that he saw the lips of the other move and that sound of those words registered on the witness' auditory organs. Yet ventriloquial demonstrations have shown that such is not always reliable. Pursuing the other extreme, a plaintiff might attempt to make out an entire case in the absence of objection by saying, "I am entitled to the amount for my personal injuries that I sued for." Neither position can be sustained. Courts do not exist as a parade ground for logicians. We must seek always

to follow those courses which enable our citizenry to adjust their relations to and dealings with each other most satisfactorily. "Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guaranties in the Bill of Rights." Noble State Bank v. Haskell, 219 U. S. 575, 31 S. Ct. 299, 55 L. Ed. 341. The wisdom of this course in the matter under discussion is pointed out in Knights of Maccabees v. Johnson (Tex. Civ. App.) 143 S. W. 718. A wise discretion must be exercised in considering what unobjected to testimony will be discarded because of improper form "and the judgment will not be reviewed because of his ruling unless it appears that he had abused his discretion." And quoting from Missouri Pac. Ry. Co. v. Lamothe, 76 Tex. 219, 13 S. W. 194, 195, "usually, some reason for the delay in urging the objection ought to be made to appear, and the decision upon such objections ought to be left more to the discretion of the trial courts." Those were cases in which motions to exclude testimony came some time after it had been admitted without objection, but the reasoning of same applies more forcibly to this case, where objection is first made on motion for instructed verdict after the evidence is closed and the witnesses discharged, or on appeal.

In Matlock v. Glover, 63 Tex. 231, it was said that oral testimony given without objection as to the unpaid balance due on sale of a tract of land was for the jury to consider even though the testimony showed that that balance was represented by two notes, where the notes were pleaded and the parties therefore knew of the existence of the notes at the time the testimony was given. Also holding the same rule as applied to other facts, Gray v. Fussell, 48 Tex. Civ. App. 261, 106 S. W. 454; Daniel v. Harvin, 10 Tex. Civ. App. 439, 31 S. W. 421; Crebbin v. Farmers' Nat. Bank (Tex. Civ. App.) 50 S. W. 402; Mensing v. Cardwell, 33 Tex. Civ. App. 16, 75 S. W. 347. In Long v. Garnett, 59 Tex. 229, suit was on a note. It was not produced nor was its absence accounted for. The plaintiff testified orally to the content of same. The contention on appeal was that the evidence did not warrant the judgment. "The note itself is the best evidence, and the opposite party may demand that it be produced or its absence accounted for. But if he permit secondary evidence to be introduced upon the trial without objection, he cannot make the objection for the first time upon appeal." The same holding is announced in Brown v. Lessing, 70 Tex. 544, 7 S. W. 783, in which a sale made by a written document was the basis of the suit.

If Matlock v. Glover, or Long v. Garnett, or Brown v. Lessing is still the law, then a reading of Henry v. Phillips in the light of those cases indicates that our Supreme Court

has already made the distinction we seek to make here.

■ The exception to a special issue, "that it places a greater burden on the defendant than is required by the testimony," does not support an assignment of error that the issue submitted to the jury is one of law.

■ It is not necessary for the appellee to be originally a consenting party to the contract between Johnson and appellant. A beneficiary may sue on contracts made for his benefit without his knowledge. A large industry founded on this rule is the life insurance business.

All assignments of error have been examined and are overruled.

The judgment is affirmed.